UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MICHAEL KEITH BROOKS,

        Plaintiff,

        v.                                             Case No. 18-C-1767

STEVEN ARTUS, et al.,

        Defendants.

---

**DECISION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff Michael Keith Brooks, who is a Wisconsin state prisoner representing himself, filed a complaint under 42 U.S.C. § 1983. District Judge J. P. Stadtmueller, to whom this case previously was assigned, screened the complaint and allowed Plaintiff to proceed against Defendants on claims related to his medical treatment and the conditions of his confinement. Plaintiff amended his complaint, and Judge Stadtmueller screened it and permitted Plaintiff to proceed on the same claims against a different set of defendants. The case was reassigned to me, and Defendants moved for summary judgment. Dkt. Nos. 39 & 49. The motions are fully briefed and before this court for decision.

## BACKGROUND

The facts are taken from Defendants' Proposed Findings of Fact and Declarations in Support and Plaintiff's deposition. Dkt. Nos. 40, 42–46 & 51–53. Plaintiff submitted three "proposed material of fact," which contain additional facts but no responses to Defendants' proposed facts. Dkt. Nos. 58, 62 & 64. He also submitted two declarations. Dkt. Nos. 59 & 63. Defendants responded to Plaintiff's proposed facts. Dkt. Nos. 67–68 & 70. I will consider

Plaintiff's proposed facts only to the extent they are supported in his declarations or by evidence elsewhere in the record and will deem admitted Defendants' facts, to which he failed to respond. *See* Fed. R. Civ. P. 56(c)(1) & (e); Civil L. R. 56(b)(1)(C)(i), (b)(2)(B)(i)–(ii), (b)(4); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission."). I will consider arguments in the supporting memoranda only to the extent they properly refer to each party's statement of facts. *See* Civil L. R. 56(b)(6).[1]

**A. The Parties**

Plaintiff is an inmate at the Wisconsin Resource Center but sues for events that occurred while he was a pretrial detainee incarcerated at the Milwaukee County Jail (Jail) awaiting resolution of pending charges. Dkt. No. 40, ¶ 1; Dkt. No. 51, ¶ 2. He sues Lieutenants Steven Artus and Pedro Ruiz and Corrections Officers Quivon Dillon and Jeffrey Erickson (collectively the County Defendants), all of whom worked at the Jail during the events alleged in Plaintiff's amended complaint. Dkt. No. 40, ¶¶ 4–7. Defendant Brandon Decker is a Nurse Practitioner who worked at the Jail at all relevant times. Dkt. No. 52, ¶ 1.

**B. Plaintiff's Amended Complaint**

Plaintiff's amended complaint is the operative complaint in this matter. Dkt. No. 32. Because Plaintiff's amended complaint is verified, I will treat it as "the equivalent of an affidavit" for purposes of this decision. *See Devbrow v. Gallegos*, 735 F.3d 584, 587 (7th Cir. 2013); *Ford v. Wilson*, 90 F.3d 245, 246–47 (7th Cir. 1996).

---

[1] Defendant Decker filed a "Motion re Proposed Findings of Fact," in which he requests that I accept his proposed findings of fact, strike Plaintiff's proposed facts, and enter summary judgment in his favor. Dkt. No. 66. As explained, I will accept Defendants' proposed facts as uncontested and consider Plaintiff's facts only where he supports them with evidence. This order will decide both motions for summary judgment. I will not enter a separate order addressing Decker's motion, which is **DENIED as moot**.

Plaintiff states that he has medical conditions that require the use of a catheter, which he changes himself up to four times each day. Dkt. No. 22, ¶ 12. He states that from August to October 2017, he often was not provided enough catheters, which caused him to reuse temporary catheters without lubricant and wait up to sixteen hours to relieve himself. *Id.*, ¶¶ 12–13, 18, 21–22, 35–36, 43, 45–46. Plaintiff states he suffered pain from the delay, was at risk for a urinary tract infection, and often urinated on himself. *Id.*, ¶¶ 12–13. He was sometimes denied showers or forced to sleep in soiled clothing or on soiled sheets. *Id.*, ¶¶ 13–14, 16, 18–19. In August 2017 Plaintiff grieved his issues, and Nurse Decker responded that he "would have things looked into." *Id.*, ¶¶ 23–24.

Plaintiff states that on September 3, 2017, Ruiz denied him a shower but provided him a change of clothing and fresh linens. *Id.*, ¶ 17. On September 9, 2017, Dillon denied him a shower and a change of clothing and did not contact the medical unit to have catheters provided to Plaintiff. *Id.*, ¶ 18. The same day, Erickson denied Plaintiff's request for a shower but provided him clean clothing. *Id.*, ¶ 19. Plaintiff was forced to sleep that night on sheets and blankets that smelled of urine. *Id.* Plaintiff states that he wrote to Artus about his complaints and medical issues but received no response and saw no change in treatment. *Id.*, ¶ 25.

On September 13, 2017, Plaintiff spoke with Nurse Decker about his medical issues and was told the only solution was to implant a permanent catheter attached to a urine bag. *Id.*, ¶ 20. Plaintiff received responses to some of his grievances, some of which were determined to be "founded," but he saw no change in treatment. *Id.*, ¶¶ 25–48. Plaintiff states he eventually received "partial treatment" for his issues in October 2017. *Id.*, ¶ 48.

**C. Detainee Housing and Medical Treatment at the Jail**

The Jail has general population units and segregation units, where detainees may be sent for discipline. Dkt. No. 40, ¶ 11. Plaintiff spent time in general population, the special needs unit,

3

and in disciplinary segregation. *Id.*, ¶¶ 12, 15. He also was confined to his cell on three occasions for minor rule violations. *Id.*, ¶ 14. While in the general population, Plaintiff had access to showers while the dayroom was open. *Id.*, ¶ 48. While in segregation, Plaintiff was in his cell with only limited time outside the cell for a shower. *Id.*, ¶ 49. Detainees in the disciplinary unit generally are given one hour for showers or, when possible, may be allowed "10-minute quick showers." *Id.*, ¶ 50. If a detainee has a medical condition requiring a shower, he may go to the clinic to shower. *Id.*, ¶ 51. Plaintiff testified at his deposition that he was provided alcohol pads or disinfectant and had soap in his cell. *Id.*, ¶ 58; Dkt. No. 46-1 at 104:14–105:1.

Medical treatment for detainees at the Jail is provided under contract by Armor Correctional Health Services (Armor) and its employees. Dkt. No. 40, ¶¶ 16–17. Armor employees screen entering detainees and would have been aware of Plaintiff's need for catheters and other medical supplies. *Id.*, ¶¶ 18–19. Armor also would have determined any necessary medical restrictions for detainees at the Jail and provided necessary medical supplies to Jail staff. *Id.*, ¶¶ 20–23. Jail staff do not have access to inmates' medical records and may not be aware of each inmate's medical conditions. *Id.*, ¶ 21.

While Plaintiff was in the general population and disciplinary units, Armor staff provided him catheters, pull-ups, and alcohol wipes. *Id.*, ¶ 24. Medical supplies often were delivered on the medical cart directly to general population pods, and Plaintiff testified that he was aware medical items would often arrive on the cart. *Id.*, ¶¶ 22, 26. Armor distributed medical supplies two to three times per day, during which time detainees may voice medical concerns to Armor staff. *Id.*, ¶¶ 27–28. Jail employees, including corrections officers, do not provide medical supplies and have no authority or ability to initiate or direct medical services for detainees. *Id.*, ¶¶ 25, 29. Jail employees instead forward medical requests and concerns to Armor, contact Armor to notify them of a detainee's needs, or request that Armor staff provide needed medical supplies.

4

*Id.*, ¶¶ 30–32. Corrections officers and inmate workers regularly provide clean linens and clothing to inmates and detainees twice a week on a one-for-one exchange. *Id.*, ¶ 60.

**D. Plaintiff's Medical Requests and Treatment**

Plaintiff suffers from urinary retention and "acute bladder." Dkt. No. 51, ¶ 4. Those pre-existing medical issues require him to self-catheterize and sometimes cause him additional adverse health effects, including urinary tract infections. Dkt. No. 40, ¶¶ 8, 10. When not incarcerated, Plaintiff would use two to four catheters per day. *Id.*, ¶ 33. He testified that he assumed he would receive four catheters per day at the Jail but often received only two per day. *Id.* Plaintiff testified that he had occasional issues with the catheters, which would result in urine leaking "in drops and dribbles" on his clothes and linens. *Id.*, ¶¶ 46–47. Those leaks would dry but would cause his clothes and linens to smell. *Id.*, ¶ 62. Because of the occasional leaking, he also wore pull-ups that Armor supplied. *Id.*, ¶ 47.

   **1. Claims Against County Defendants: Requests for Catheters, Showers, and Clean Clothes and Linens**

Jail logs show that, when in the general population, Plaintiff requested medical supplies on at least seven occasions from August to October 2017. Dkt. No. 42-4 at 9–10, 13, 15. Officers requested and/or received medical supplies to meet Plaintiff's requests. Dkt. No. 40, ¶¶ 34–37; Dkt. No. 42-4 at 4, 6, 9–10, 13–16.

Plaintiff testified that he knew to submit a medical request form, not a grievance, to receive more catheters and understood that medical personnel, not corrections officers, were responsible for providing him medical supplies. Dkt. No. 40, ¶¶ 42, 44–45. Yet Plaintiff frequently submitted grievances about his need for medical supplies. *Id.*, ¶ 44. Corrections officers either forwarded Plaintiff's grievances to the medical unit for a response, *id.*, ¶ 43; Dkt. No. 42-3 at 2, 5, 8, 11, 16, 20, 24, 30, 32, 36, or contacted the medical unit about the supplies and retrieved them or had them

5

provided to Plaintiff, Dkt. No. 42-3 at 13, 27, 34. Plaintiff states that he received responses to only some grievances about his medical issues or supplies, and some of those were determined to be founded. Dkt. No. 63, ¶¶ 9–25. He does not name any County Defendant as personally responsible for his shortage of catheters or not receiving a response to his grievances.

Plaintiff was in disciplinary segregation from September 3 through 17, 2017. Dkt. No. 42-2 at 9; Dkt. No. 59, ¶ 3. He continued to receive medical supplies while in segregation. Dkt. No. 40, ¶ 24; Dkt. No. 42-4 at 4, 6. Plaintiff states that while in segregation, Ruiz denied his request for a shower on September 3, 2017; Dillon denied his request for a shower and clean clothes and linens on September 9, 2017; and Erickson denied his request for a shower on September 9, 2017. Dkt. No. 59, ¶¶ 4–6. Plaintiff testified that Dillon denied him a shower on a second occasion while Plaintiff was in segregation, but he does not provide the date. Dkt. No. 46-1 at 24:11–22. He states that Artus was aware of Plaintiff's denied requests for showers and clean clothes and linens "but did nothing to intervene while in segregation." Dkt. No. 59, ¶ 7.

Plaintiff testified that he understood the rules were different for inmates and detainees in segregation. Dkt. No. 40, ¶ 56. Nonetheless, he insisted that, "If I needed it, I should have been able to shower." *Id.*, ¶ 57. He testified that it was only while he was in segregation that he did not always receive extra or clean clothes or linens. *Id.*, ¶¶ 63, 65. Plaintiff testified it was "a couple of days to at most four or five days" that he did not receive clean clothes and linens in segregation. *Id.*, ¶ 64. Plaintiff testified that he did not suffer physical harm from not receiving showers or clean clothes and linens while in segregation, but he contemplated suicide because he felt "nobody is really taking me serious about the things that I need." *Id.*, ¶ 67; Dkt. No. 46-1 at 27:14–23.

While in the general population, Plaintiff had permission to shower as needed. Dkt. No. 40, ¶ 59; Dkt. No. 42-4 at 10. Plaintiff states that he was forced to reuse catheters on September 25

6

and 26, 2017, but he does not state whether he had requested catheters before those dates or whether any Defendant failed or refused to provide him medical supplies. Dkt. No. 63, ¶ 7.

Artus reiterates that medical employees, not corrections officers, provide medical supplies to inmates and detainees at the Jail. Dkt. No. 43, ¶¶ 7–9. But if an inmate or detainee asked him for specific medical supplies, such as a catheter, he would have called the medical unit, asked their staff to bring the requested supplies, and had a corrections officer follow up with him if the inmate still did not receive the items. *Id.*, ¶ 11. Artus states that if "something seemed off with medical supplies," he would have called medical about providing the supplies. *Id.*, ¶ 12; Dkt. No. 40, ¶ 38. If he received a letter about medical supplies, Artus would have forwarded the letter to medical. Dkt. No. 40, ¶ 39; Dkt. No. 43, ¶ 19. Artus states that if an inmate continued not to receive timely medical supplies, he would have spoken with the medical supervisor and followed up with the inmate. Dkt. No. 40, ¶ 40; Dkt. No. 43, ¶ 20. Plaintiff testified that Artus accompanied him to the clinic on at least one occasion to address his concerns with Armor. Dkt. No. 40, ¶ 41.

Erickson states that he does not specifically recall Plaintiff or Plaintiff's requests for medical supplies, clean clothes or linens, or a shower. Dkt. No. 45, ¶¶ 4–7. He states that, as a corrections officer, he would not be aware of any inmate's medical condition and would have no access to his medical records. *Id.*, ¶ 4. Erickson stated that if a detainee requested medical supplies, he would contact medical staff. *Id.*, ¶ 5. He further stated that if an inmate in the general population had soiled clothes or linens, he would provide him clean clothing or linens and permit the inmate a quick shower when possible and only if the recreation room were empty and available. *Id.*, ¶¶ 6–7; Dkt. No. 40, ¶ 52. Erickson stated that a detainee in segregation would have only a limited opportunity for even a short shower. Dkt. No. 45, ¶ 8. Plaintiff testified that Erickson denied only one of his three requests for a shower while Plaintiff was in segregation. Dkt. No. 40, ¶ 55. He testified that Erickson did provide him clean clothes and linens. *Id.*, ¶ 68.

7

Ruiz states that he does not remember Plaintiff and does not recall a specific instance when Plaintiff requested a shower or clean clothes and linens. Dkt. No. 44, ¶¶ 4, 6. He states that if an inmate or detainee had dirty clothes or linens, he "would [have] done [his] best to obtain clean items for the inmate." *Id.*, ¶ 6. He also states that he would call medical staff if an inmate asked him about specific medical supplies, such as a catheter. *Id.*, ¶ 7. Plaintiff testified that Ruiz did provide him clean clothes and linens while he was in segregation. Dkt. No. 40, ¶ 68.

### 2. Nurse Decker's Treatment

Nurse Decker saw Plaintiff on three occasions about his medical issues: September 13, 2017, October 9, 2017, and October 12, 2017. Dkt. No. 51, ¶ 7; Dkt. No. 53-2 at 6. According to Decker's notes from the September 13, 2017 appointment, Decker told Plaintiff he would follow up with security in the segregation unit about providing Plaintiff clean clothes and showers. Dkt. No. 53-1 at 1. He also stated he "[w]ill look into keeping some Caths with security." *Id.* Plaintiff asserts Decker "did nothing" after this appointment. Dkt. No. 62, ¶¶ 2–3. Decker disputes Plaintiff's assertion and points to Plaintiff's medical records documenting his visits with Plaintiff. Dkt. No. 67, ¶ 2.

Notes from the October 9, 2017 appointment show Decker recommended placement of a permanent (or Foley) catheter. Dkt. No. 53-1 at 2. Decker noted the presence of a mass on the wall of Plaintiff's bladder and wrote that the Foley catheter could "reduce risk of vascular rupture from bladder wall mass." *Id.* Decker also made a referral to a urologist to review the mass. *Id.* Plaintiff initially agreed to the Foley catheter, but at the October 12, 2017 appointment, he refused placement of the Foley catheter. Dkt. No. 51, ¶ 8; Dkt. No. 53-1 at 3. He told Decker he "did not want to deal with the cath or leg bag while on the unit" and preferred to continue to self-catheterize. Dkt. No. 51, ¶ 10; Dkt. No. 53-1 at 3. Plaintiff states he asked Decker during the October 12, 2017 appointment about receiving adequate temporary catheters. Dkt. No. 63, ¶ 5. Decker disputes this

8

and cites the medical notes, which state only that Plaintiff refused placement of the Foley catheter. Dkt. No. 67, ¶ 4.

Decker states that a permanent catheter would alleviate the need for Plaintiff to receive multiple temporary catheters every day. Dkt. No. 51, ¶ 9. Decker states he was not responsible for ordering or refilling Plaintiff's medical supplies or providing them to him. Dkt. No. 52, ¶¶ 3, 5. But when he learned Plaintiff believed he was not receiving enough catheters, Decker attempted to obtain additional catheters for him. Dkt. No. 51, ¶ 11. Decker also states he was not responsible for preventing Plaintiff from showering or receiving clean clothes or linens. Dkt. No. 52, ¶ 4.

Plaintiff states he filled out health service request slips on August 13–16, 2017, about "all of the issues in this complaint," and Decker said he would look into the issues. Dkt. No. 63, ¶ 8. Decker disputes telling Plaintiff he would look into the health service request slips. Dkt. No. 67, ¶ 7. The August 2017 health service request slips are not in the record. Plaintiff submitted slips only from October 3 to 24, 2017. Dkt. No. 60 at 22–28. Plaintiff states that on September 20, 2017, Decker provided him medication for a bladder infection. Dkt. No. 62, ¶ 24; Dkt. No. 63, ¶ 26. Decker disputes that Plaintiff had a bladder infection and states he was given the medication as a prophylactic for conditions caused by his temporary catheter use. Dkt. No. 67, ¶ 24.

## ANALYSIS

### A. Legal Standard

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

9

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). Neither argument nor speculation is enough to avoid summary judgment. *See Ammerman v. Singleton*, 817 F. App'x 265, 268 (7th Cir. 2020) (citing *Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014)). The nonmoving party "needs to come forward with *evidence*" showing its entitlement to relief. *Cooper v. Haw*, 803 F. App'x 942, 946 (7th Cir. 2020) (citing *Beatty v. Olin Corp.*, 693 F.3d 750, 754 (7th Cir. 2012) (emphasis in original)).

**B. Deliberate Indifference**

Because Plaintiff was a pretrial detainee at the time of the events, his claims are analyzed under the Fourteenth Amendment. *See Hardeman v. Curran*, 933 F.3d 816, 821–22 (7th Cir. 2019) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)). Under the Fourteenth Amendment standard, Plaintiff must show that Defendants acted "with purposeful, knowing, or reckless disregard of the consequences" of their actions. *Miranda v. County of Lake*, 900 F.3d 335, 354 (7th Cir. 2018). It is not enough to show they acted with negligence or even gross negligence. *See Williams v. Ortiz*, 937 F.3d 936, 942 (7th Cir. 2019) (citing *McCann v. Ogle Cty.*, 909 F.3d 881, 886 (7th Cir. 2018)). Specific to his claim challenging the conditions of his confinement, Plaintiff must show the conditions were objectively unreasonable; that is, he must show that the conditions were not "'rationally related to a legitimate non-punitive governmental purpose'" or that they were "'excessive in relation to that purpose.'" *Hardeman*, 933 F.3d at 822 (citing *Kingsley*, 576 U.S. at 397). Plaintiff similarly must show that the medical care provided was

10

objectively unreasonable, but he need not show that any defendant was subjectively aware that the medical treatment was unreasonable. *Miranda*, 900 F.3d at 352 (citation omitted). The court must "focus on the totality of facts and circumstances" that Defendants faced and "gauge objectively— without regard to any subjective belief held by the individual—whether the response was reasonable." *Williams*, 937 F.3d at 942.

   1. **County Defendants**

Plaintiff fails to present evidence showing any County Defendant personally was responsible for him not receiving the catheters or other medical supplies he needed. He states only generally that he was not receiving adequate medical supplies, and none of his grievances or health services requests name any County Defendant who refused to provide him medical supplies.

Plaintiff's issue is not with the officers but with the medical unit's response. The County Defendants were "'entitled to defer to the judgment of jail health professionals' so long as they do not ignore a detainee." *McGee v. Adams*, 721 F.3d 474, 483 (7th Cir. 2013) (quoting *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012)). There is no evidence that the County Defendants ignored Plaintiff's requests for medical supplies. Quite the contrary, the Jail logs show corrections officers regularly forwarded his complaints to the medical unit, which was responsible for providing detainees medical supplies. The officers were not responsible for providing medical supplies and lacked the authority to do so. Defendants state that they would have contacted the medical unit if an inmate told them he was not receiving the catheters he needed, and the evidence supports those statements.

Nonmedical officers also may be held liable "if 'they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner.'" *King*, 680 F.3d at 1018 (7th Cir. 2012) (quoting *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008)). But Plaintiff presents no evidence suggesting the County Defendants had a reason to

believe Plaintiff was not properly being treated. They had no medical expertise that would allow them to determine whether Plaintiff needed more catheters or simply wanted more than he received. The County Defendants did not violate Plaintiff's rights by adhering to their responsibilities as corrections officers and deferring to the medical judgment and responsibilities of Armor and its employees to treat Plaintiff's medical issues. *See Miranda*, 900 F.3d at 343 (citing *Greeno v. Daley*, 414 F.3d 645, 655–56 (7th Cir. 2005) (recognizing "the division of labor" that allows Jail employees to "trust the professionals to provide appropriate medical attention")).

Nor did the County Defendants unreasonably deny Plaintiff's requests for showers or clean clothes and linens. He cites only one instance each that Officers Ruiz and Erickson denied him a shower or clean clothes and linens and only two denials by Dillon. Each of those instances occurred during Plaintiff's two weeks in disciplinary segregation. Plaintiff does not explain why the officers denied his requests for a shower. But he testified that he understood, and it is undisputed, that inmates in segregation have fewer opportunities for showers, even quick ones, and must wait until a shower is available during the designated time. Plaintiff does not provide evidence that he was singled out and denied an opportunity to shower, just that he was denied one on a few occasions while in segregation. The evidence also shows that he had soap in his cell. Under these circumstances, it was not unreasonable for Defendants to hold Plaintiff to the stricter rules for detainees in segregation and deny his requests for extra showers and clean clothes and linens.

Plaintiff does not state that Artus personally denied him a shower or clean clothes or linens but states only that Artus knew the officers had denied Plaintiff's requests and failed to remedy the situation. Artus may not be held responsible as the supervisor of the officers unless he knew about their conduct and facilitated, approved, condoned, or turned a blind eye to it "for fear of what [he] might see." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). The evidence

12

shows Artus made reasonable attempts to provide Plaintiff the supplies he needed, including by contacting or going with Plaintiff to the medical unit to ask about his medical supplies. There is no evidence that Artus condoned or had any role in the officers denying Plaintiff's requests for showers or clean clothes. Even if he did, the officers' actions were reasonable, so there is nothing for which Artus may be held liable.

Plaintiff claims the County Defendants failed to respond to some of his grievances. But the Jail is not required to have specific grievance procedures, and that it does have a system in place does not create a constitutional right to a grievance response. *See Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Defendants may not be held liable for not responding to some of Plaintiff's grievances.

While Plaintiff may have occasionally experienced a lack of supplies to address his medical issues, the evidence does not show that the County Defendants unreasonably responded to his concerns or denied his requests for showers or clean clothes and linens. Because no reasonable jury could conclude otherwise, the County Defendants are entitled to judgment as a matter of law.

**2. Decker**

The evidence does not establish that Decker provided objectively unreasonable medical care. Decker treated Plaintiff only three times between August and October 2017. During those visits, Decker encouraged Plaintiff to have a permanent catheter placed, which would prevent him from needing to use temporary catheters and reduce the risk of complications from using the temporary catheters. Plaintiff refused the permanent catheter because he preferred to continue self-catheterizing multiple times per day. Plaintiff states he was at risk for a bladder infection or urinary tract infection from using the temporary catheters, but there is no evidence he suffered an infection while at the Jail. The evidence shows Decker instead prescribed Plaintiff prophylactic medication to avoid complications from Plaintiff's temporary catheter use, which could have been

avoided by placement of the permanent catheter that Plaintiff refused. That Plaintiff rejected Decker's reasonable treatment option does mean the treatment was objectively unreasonable. *See Stewart v. Wall*, 688 F. App'x 390, 393 (7th Cir. 2017) (citing *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011); *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010)).

Plaintiff claims Decker failed adequately to respond to his grievances or provide him temporary catheters and other medical supplies. Plaintiff asserts Decker told him he would "look into" Plaintiff's request for medical supplies. Decker's name does not appear anywhere on the medical request slips in evidence, nor is there a response from Decker or any medical staff that they would "look into" Plaintiff's concerns. The evidence also does not show Decker received or reviewed Plaintiff's grievances. It is undisputed that it was not Decker's responsibility to respond to inmate grievances or provide Plaintiff medical supplies, including catheters. Yet Decker attempted to get more catheters to Plaintiff when he learned Plaintiff had requested more. The evidence does not support a finding that Decker's treatment and actions to address Plaintiff's medical issues were objectively unreasonable. Because no reasonable jury could conclude otherwise, Decker is entitled to judgment as a matter of law.

### 3. Plaintiff's Request for Summary Judgment

Plaintiff did not move for summary judgment, but he labels most of his pleadings as in support of his own request for summary judgment. Dispositive motions were due July 1, 2020. Plaintiff submitted his materials on August 31, 2020. Although I granted Plaintiff additional time to file his response materials, Dkt. No. 56, I did not allow him additional time to submit materials in support of a motion for summary judgment. To the extent Plaintiff seeks summary judgment, the request is **DENIED** as untimely and for the reasons explained above.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Decker's motion to accept his facts, Dkt. No. 66, is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Defendants' motions for summary judgment, Dkt. Nos. 39 & 49, are **GRANTED**, and this case is **DISMISSED**. The Clerk is directed to enter judgment accordingly.

Dated at Green Bay, Wisconsin this 26th day of October, 2020.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

---

This order and the judgment to follow are final. Plaintiff may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. § 1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.